IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| THE PORTER CASINO RESORT, INC., <br><br> Plaintiff, <br><br> v. <br><br> GEORGIA GAMING INVESTMENT, LLC; and TENNESSEE HOLDING INVESTMENTS, LLC, <br><br> Defendants and Third-Party Plaintiffs, <br><br> v. <br><br> CHICAGO TITLE AND TRUST COMPANY; and M. COLE PORTER, <br><br> Third-Party Defendants. | No. 18-2231 |

**ORDER**

This action arises from a planned venture to buy a casino in Tunica, Mississippi. (Compl. ECF No. 1-1 at 9.) Plaintiff The Porter Casino Resort, Inc. ("Porter Casino") sought to buy and operate a casino with money invested by Defendants Georgia Gaming Investment, LLC ("Georgia Gaming") and Tennessee Holding Investments, LLC ("Tennessee Holding") (collectively "Defendants"). Defendants transferred some of their capital investment into an escrow account held by Third-Party Defendant Chicago Title and Trust Company ("Chicago Title"). Chicago Title was to release the funds

on the satisfaction of certain conditions leading to a final deal to buy the casino. The relationship between Defendants and Porter Casino deteriorated and various disputes about financing and alleged misrepresentations arose. Defendants and Porter Casino decided to terminate their agreement. Porter Casino continued negotiating with other partners to buy the casino and ultimately obtained possession of the escrow deposit from Chicago Title.

Porter Casino sues Defendants, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference with a business relationship. (ECF No. 50 ¶¶ 18—43.) Defendants countersue claiming breach of contract, fraud, conversion, trover, and misappropriation. (ECF No. 40 ¶¶ 30—58.) Defendants have impleaded Chicago Title and M. Cole Porter, the president and CEO of Porter Casino. (See id.) Defendants bring a breach of contract claim against Chicago Title on the ground that Chicago Title improperly disbursed the escrow funds to Porter Casino. (Id. ¶¶ 30—38.) Before the Court is Chicago Title's February 22, 2019 motion to dismiss. (ECF No. 53.) Chicago Title argues that impleader is improper under Federal Rule of Civil Procedure 14. Defendants responded on April 23, 2019. (ECF No. 65.) Chicago Title replied on May 2, 2019. (ECF No. 67.)

For the following reasons, Chicago Title's motion to dismiss is GRANTED. Defendants' breach of contract claim against Chicago Title is DISMISSED without prejudice.

## I. Background

For purposes of Chicago Title's motion to dismiss, the facts are taken from Defendants' Third-Party Complaint.

In 2017, Porter Casino approached Defendants about an opportunity to buy the Fitzgerald Casino & Hotel (the "Casino") in Tunica, Mississippi. (ECF No. 40 ¶ 3–4.) At all times relevant to this suit, and continuing to the present, The Majestic Star Casino, LLC and Majestic Mississippi, LLC (collectively "Majestic Star") have owned the Casino. (Id. ¶ 5.)

On August 29, 2017, Porter Casino and Georgia Gaming executed an Investment Agreement. (Id.) The same day, Porter Casino and Tennessee Holding executed an identical Investment Agreement. (Id.) The Investment Agreements "evidenced [Defendants'] intent" to make equity investments totaling $3 million before the purchase of the Casino and to provide additional funds to operate the Casino. (Id. ¶ 7–8.) In return, Porter Casino agreed to transfer shares of stock in Porter Casino to Defendants and to provide seats on Porter Casino's Board of Directors to Defendants. (Id. ¶ 7.) Porter Casino also agreed to restructure its management and organization. (Id.)

During the negotiation process, Porter Casino "repeatedly assured" Defendants that it had secured all necessary funding to buy the Casino. (Id. ¶ 11.) On behalf of Porter Casino, Defendants deposited $1.5 million into an escrow account held by Chicago Title

3

for the purchase of the Casino. (Id. ¶ 13.) Chicago Title knew that Defendants were funding the escrow account as investors in Porter Casino and as putative shareholders in Porter Casino. (Id. ¶ 14.) After the deposit was made, Porter Casino, Chicago Title, and Majestic Star executed an agreement governing the holding and disbursement of funds from the escrow account (the "Escrow Agreement"). (Id. ¶ 15.)

Under Porter Casino's agreement with Defendants, all but a small portion of the escrow deposit was refundable to Defendants prior to the execution of a formal, binding agreement between Porter Casino and Majestic Star to buy the Casino. (Id. ¶ 17.) Despite Porter Casino's assurances that it had secured all of the necessary funding, Defendants obtained information that gave them "grave concerns" about Porter Casino's ability to close the deal. (Id. ¶ 18.) Porter Casino never issued stock to Defendants, never elected Defendants' representatives to its board of directors, and never undertook the agreed restructuring. (Id. ¶ 19.)

Defendants refused to invest more money in Porter Casino and refused to consent to a binding purchase agreement between Porter Casino and Majestic Star until Defendants' concerns about Porter Casino's finances were resolved. (Id. ¶ 20.) Ultimately, Defendants determined that Porter Casino had not secured the funding to buy the Casino and sought a refund of the escrow deposit. (Id. ¶ 21.) Porter Casino agreed to Defendants' request. (Id. ¶ 22.)

4

On November 30, 2017, Defendants and Porter Casino executed an agreement that: (1) terminated the Investment Agreements; (2) required Porter Casino to refund Defendants' $1.5 million escrow deposit; and (3) precluded Porter Casino from entering a purchase agreement with Majestic Star, which would potentially subject the escrow deposit to forfeiture, until after the refund had been paid to Defendants. (Id.)

Porter Casino has not refunded the escrow deposit to Defendants. (Id. ¶ 23.) On February 9, 2018, Defendants sent a letter to Chicago Title demanding that Chicago Title refund the escrow deposit. (Id. ¶ 24.) Defendants did not receive a refund. (Id. ¶ 25.) Defendants then learned that Porter Casino was continuing to deal with Majestic Star and Chicago Title to "execut[e] the necessary documents and agreements . . . to obtain possession of the Escrow Deposit . . . ." (Id. ¶ 27.) On February 20, 2018, Porter Casino took possession of the escrow deposit from Chicago Title. (Id.) Porter Casino has not transferred the escrow deposit to Defendants. (Id. ¶ 29.)

On February 27, 2018, Porter Casino filed a complaint against Defendants in the Tennessee Chancery Court for the Thirtieth Judicial District at Memphis. (ECF No. 1 at 9.) Porter Casino alleges that Defendants demanded the return of their investment but continued to insist on their right to receive shares of stock. (ECF No. 50 ¶ 14.) Porter Casino alleges that it refused

5

Defendants' demands and that Defendants then took various actions to wrongfully obstruct the purchase of the Casino. (Id.) Porter Casino brings claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and two counts of tortious interference with a business relationship, and seeks a declaratory judgment. (Id. ¶¶ 18–43.) On April 6, 2018, Defendants removed the case to this Court. (Notice of Removal, ECF No. 1 at 2.) Porter Casino filed an Amended Complaint on January 22, 2019. (ECF No. 50.)

Defendants filed an Amended Answer and a Third-Party Complaint against Chicago Title and M. Cole Porter. (ECF No. 40) Defendants bring a breach of contract claim against Chicago Title on the ground that Chicago Title breached the Escrow Agreement by improperly transferring the escrow deposit to Porter Casino. Although they are not parties to the Escrow Agreement, Defendants contend they are third-party beneficiaries of the contract and entitled to sue for its breach.

## II. Jurisdiction

Defendants removed to this Court. (ECF No. 1.) The Notice of Removal asserts that the Court has diversity jurisdiction under 28 U.S.C. § 1332(a), making removal proper under 28 U.S.C. § 1441(a). As the removing parties, Defendants bear the burden of establishing federal jurisdiction. Mason v. Lockwood, Andrews & Newnam, P.C., 842 F.3d 383, 389 (6th Cir. 2016).

A federal district court has original jurisdiction of all civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1).

Porter Casino is a Tennessee corporation with its principal place of business in Memphis, Tennessee. (Compl., ECF No. 1-1 at 9.) Porter Casino is a citizen of Tennessee. See 28 U.S.C. § 1332(c)(1). Defendant Georgia Gaming Investments, LLC is a Georgia limited liability company, whose two sole members reside in Georgia. (ECF No. 19.) Defendant Tennessee Holding Investments, LLC is a Georgia limited liability company, whose sole member resides in Georgia. (ECF No. 18.) "[L]imited liability companies 'have the citizenship of each partner or member.'" V & M Star, LP v. Centimark Corp., 596 F.3d 354, 356 (6th Cir. 2010) (quoting Delay v. Rosenthal Collins Grp., LLC, 585 F.3d 1003, 1005 (6th Cir. 2009)). Defendants are citizens of Georgia.

Plaintiff seeks "not less than $1,500,000, plus such interest as allowed by law, attorneys fees and damages as allowed by law." (Compl., ECF No. 1-1 at 14.) "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938); see also Charvat v. NMP, LLC, 656 F.3d 440, 447 (6th Cir. 2011). The requirements of diversity jurisdiction are satisfied.

7

Defendants' claims against Chicago Title and M. Cole Porter derive from a "common nucleus of operative fact." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966). The Court has supplemental jurisdiction over Defendants' Third-Party Complaint against Chicago Title and M. Cole Porter. AutoZone, Inc. v. Glidden Co., 737 F. Supp. 2d 936, 941 (W.D. Tenn. 2010)

### III. Standard of Review

Rule 14 provides that "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4). Chicago Title moves to dismiss, arguing that impleader is not proper under Rule 14. "Although Rule 14(a) has never expressly provided for a motion to dismiss third-party claims, the federal courts have entertained both motions to dismiss and to strike and have not drawn distinctions between them." Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1460 (3d ed.). The court applies the standard of review for motions to dismiss under Rule 12(b)(6). See Starnes Family Office, LLC v. McCullar, 765 F. Supp. 2d 1036, 1056 (W.D. Tenn. 2011).

Rule 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." A Rule 12(b)(6) motion permits the defendant "to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Campbell v. Nationstar Mortg., 611 F. App'x 288, 291 (6th Cir. 2015) (quotation omitted). A

8

motion to dismiss tests only whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases that would waste judicial resources and result in unnecessary discovery. See Kolley v. Adult Protective Servs., 725 F.3d 581, 587 (6th Cir. 2013).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If a court decides in light of its judicial experience and common sense, that the claim is not plausible, the case may be dismissed at the pleading stage. Iqbal, 556 U.S. at 679. The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555).

A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A complaint need not contain detailed factual allegations. However, a plaintiff's "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."
Id.

## IV. Analysis

Defendants' third-party complaint against Chicago Title alleges breach of contract. (See ECF No. 40 ¶¶ 30–38.) Chicago Title moves to dismiss, arguing that impleader is not proper under Rule 14. (See ECF No. 53-1 at 463.)

Rule 14 governs "third-party practice," otherwise known as "impleader." Fed. R. Civ. P. 14. The Rule allows a third-party complaint to be served on "a person not a party to the action who is or may be liable to a third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co., 512 F.3d 800, 805 (6th Cir. 2008) (quoting Fed. R. Civ. P. 14(a)). The purpose of Rule 14 is "to permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all interested parties in one suit." Id.

A third-party claim is appropriate when "the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party to be impleaded." Id. at 805. The third-party claim "must be founded on a third-party's actual or potential liability to the defendant for all or

part of the plaintiff's claim against the defendant." Id. A third-party complaint usually involves claims of indemnity, contribution, or subrogation. See Fed. Home Loan Mortg. Corp. v. Kantz, No. 3:15-cv-00932, 2018 WL 1535465, at *3-4 (M.D. Tenn. Mar. 29, 2018).

In their Third-Party Complaint, Defendants allege that Chicago Title breached the Escrow Agreement by improperly transferring the escrow funds to Porter Casino. Chicago Title argues that no allegations in the Third-Party Complaint suggest that Chicago Title's liability to Defendants depends on the Defendants' potential liability to Porter Casino. (ECF No. 67 at 507.)

Defendants contend that the breach of contract claim against Chicago Title is proper under Rule 14 because:

> The allegations contained in the Third Party Complaint show that Chicago Title's liability is dependent upon the outcome of the main claim asserted by Porter Casino against Defendants. The main claim arises out of a claim made by Porter Casino that Defendants are liable to Porter Casino under a number of theories. Defendants contend that they are not liable to Porter Casino and that Porter Casino is liable to them for breach of contract, fraud, conversion, trover and misappropriation. As alleged in the Counterclaim, "all but a small portion of the Escrow Deposit was refundable . . ." (¶ 17), Defendants refused to consent to a binding Purchase Agreement . . . which would forfeit the Escrow Deposit (¶ 21) and that Porter Casino agreed that a binding Purchase Agreement would not be entered into . . . which would subject the Escrow Deposit to potential forfeiture (¶ 22). Thus, if Defendants are successful in their defense of the main claim and in the prosecution of their Counterclaim,

11

> they would be entitled to the funds previously held in
> the Escrow Deposit

(ECF No. 65 at 501 (quotation altered to reflect the abbreviated party names used elsewhere in this Order).)

Defendants do not explain how Chicago Title's alleged improper handling of the escrow deposit derives from Porter Casino's claims against Defendants or Defendants' liability to Porter Casino. Porter Casino's claims against Defendants are breach of the Investment Agreements, breach of the implied covenant of good faith and fair dealing, and two counts of tortious interference with a business relationship. (ECF No. 50 ¶¶ 18–43.) Whether Chicago Title breached its contractual obligation under the Escrow Agreement to withhold the escrow deposit from Porter Casino does not depend on whether Defendants are liable to Porter Casino. Chicago Title could be liable to Defendants for breach of contract regardless of the outcome of Porter Casino's claims against Defendants. Impleader under Rule 14 is inappropriate for Defendants' breach of contract claim against Chicago Title. Chicago Title's motion to dismiss is GRANTED.

## V. Conclusion

For the foregoing reasons, Chicago Title's motion to dismiss is GRANTED. Defendants' breach of contract claim against Chicago Title is DISMISSED without prejudice to file that claim in a separate action.

So ordered this 30th day of July, 2019.

    /s/ *Samuel H. Mays, Jr.*
Samuel H. Mays, Jr.
UNITED STATES DISTRICT JUDGE