|  |  |
|---|---|
| THE PORTER CASINO RESORT, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 2:18-cv-02231-SHM-atc ) |
| GEORGIA GAMING INVESTMENT, LLC, and TENNESSEE HOLDING INVESTMENTS, LLC, | ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| GEORGIA GAMING INVESTMENT, LLC, and TENNESSEE HOLDING INVESTMENTS, LLC, | ) ) ) ) |
| Counter-Plaintiffs/Third Party Plaintiffs, | ) ) ) |
| v. | ) ) |
| THE PORTER CASINO RESORT, INC., | ) ) ) |
| Counter-Defendant, | ) ) |
| and | ) ) |
| M. COLE PORTER, Individually, and CHICAGO TITLE AND TRUST COMPANY, | ) ) ) ) |
| Third Party Defendants. | ) |

ORDER

This is a contract case. Before the Court is The Porter Casino Resort, Inc.'s ("Porter Casino") January 27, 2021 Motion for Summary Judgment ("Porter Casino's Motion"). (D.E. No. 104). Defendants Georgia Gaming Investment, LLC ("Georgia Gaming"), and Tennessee Holding Investments, LLC ("Tennessee Holding"), (collectively "Defendants") responded on February 24, 2021. (D.E. No. 109.) Also before the Court is M. Cole Porter's ("Porter") January 27, 2021 Motion for Summary Judgment ("Porter's Motion"). (D.E. No. 103.) Defendants responded on February 24, 2021. (D.E. No. 111.) For the following reasons, Porter's Motion is **GRANTED**, and Porter Casino's Motion is **GRANTED** in part and **DENIED** in part.

I.    **Background and Procedural History**

This case arises from Porter Casino's attempt to purchase the Majestic Star Casino. (See D.E. No. 109-7, 27.) Porter is the founder, president, CEO, and sole shareholder of Porter Casino. (D.E No. 103-8, ¶ 4.) Porter Casino was created "to conduct business in furtherance of purchasing a casino resort." (Id. at ¶ 5.) Porter has sworn that his only involvement in the Majestic Star Casino transaction was in his capacity as an officer of Porter Casino. (Id. at ¶¶ 8-9.)

Initially, Porter was the sole shareholder in Porter Casino. (D.E. No. 109-7, 8.) George Stadler became a shareholder, but

surrendered his shares. (Id. at 8.) Two other people were offered shares, but the shares were never issued. (Id. at 9.)

On August 29, 2017, Porter Casino entered into a subscription agreement with each Defendant. (See D.E. No. 104-2; D.E. No. 104-4.) Under the subscription agreements, Porter Casino would issue stock to Defendants in exchange for Defendants' investing in Porter Casino. (D.E. No. 104-2, ¶¶ 4-5; D.E. No. 104-4, ¶¶ 3-4.) Defendants would then have representation on Porter Casino's board of directors. (D.E. No. 104-2, ¶ 5; D.E. No. 104-4, ¶ 5.)

The subscription agreements were "subject to the terms and conditions of separate Letters of Intent" each Defendant signed with Porter Casino. (D.E. No. 104-2, ¶ 4; D.E. No. 104-4, ¶ 4.) Defendant Tennessee Holding's letter was "made in conjunction with and subject to the terms and conditions" of Defendant Georgia Gaming's letter. (D.E. No. 104-3, ¶ 1.) Defendant Georgia Gaming's letter did not contain that clause. (See D.E. No. 104-5, ¶ 1.) Defendants were to invest $3,000,000 for pre-acquisition costs and, if needed, an additional $1,000,000 for temporary operating capital. (D.E. No. 104-3, ¶ 2; D.E. No. 104-5, ¶ 1.) The obligation to invest in Porter Casino expressed in the letters of intent was conditioned on Porter Casino's completing its purchase of the Majestic Star Casino. (D.E. No. 104-3, ¶ 8; D.E. No. 104-5, ¶ 7.) The investment was also

3

conditioned on Porter Casino's having a binding commitment for purchase money from a lender acceptable to Defendants. (D.E. No. 104-3, ¶ 9; D.E. No. 104-5, ¶ 8.) Each Defendant was obligated to deposit $500,000 into an escrow account. (D.E. No. 104-3, ¶ 10; D.E. No. 104-5, ¶ 9.) Disbursement was to be governed by an escrow agreement dated September 8, 2017. (D.E. No. 104-3, ¶ 11; D.E. No. 104-5, ¶ 10.)

The escrow agreement was among Chicago Title, Porter Casino, and the Majestic Star Casino. (D.E. No. 109-7, 27; D.E. No. 109-6.) Defendants are not referenced in it. (See D.E. No. 109-7; D.E. No. 109-6.) Porter Casino never signed a purchase and sale agreement, but it signed a letter of intent with the Majestic Star Casino. (Id. at 11.) The parties have not submitted Porter Casino's letter of intent to purchase the Casino.

Porter Casino was unable to satisfy the contractual requirements for committed debt and committed equity. (Id.) Thomas F. Fricke ("Fricke"), general counsel of Porter Casino, testified that Defendants caused both potential sources of financing to withdraw. (Id.) Fricke testified that Defendants corresponded with the seller of the Majestic Star Casino and the escrow agent, which caused the seller and the lender to end their negotiations with Porter Casino. (Id. at 22-23.)

On November 30, 2017, Defendants entered into termination agreements with Porter Casino.  (D.E. No. 109-4; D.E. No. 109-5.)  The termination agreements required Porter Casino to refund $1,500,000 to Defendants.  (D.E. No. 109-4, ¶ 2; D.E. No. 109-5, ¶ 2.)  The termination agreements, except for the escrow conditions in paragraph 3, were not binding until the $1,500,000 was refunded.  (D.E. No. 109-4, ¶ 2; D.E. No. 109-5, ¶ 2.)  The escrow conditions prohibited Porter Casino from continuing to negotiate for the purchase of the Majestic Star Casino without refunding the agreed $1,500,000 to Defendants or receiving their approval.  (D.E. No. 109-4, ¶ 3; D.E. No. 109-5, ¶ 3.)  Porter Casino was required to update Defendants regularly on the funding of the refund.  (D.E. No. 109-4, ¶ 3; D.E. No. 109-5, ¶ 3.)  Porter has sworn that the escrow deposit paid to Porter Casino has been exhausted because the funds were used to pay Porter Casino's corporate debt obligations.  (D.E. No. 103-8, ¶ 10.)

On February 27, 2018, Plaintiff Porter Casino filed its Complaint in the Chancery Court of Tennessee for the Thirtieth Judicial District at Memphis.  (See D.E. No. 1, 1.)  On April 6, 2018, Defendants removed to this Court.  (Id.)  On January 22, 2019, Porter Casino filed its Amended Complaint.  Porter Casino brings five claims.  (D.E. No. 50, ¶¶ 18-43.)  The first is a claim for breach of contract because Defendants failed to perform

their obligations under the subscription agreements.[1] (Id. at ¶¶ 18-20.) The second is a claim for breach of implied covenant of good faith and fair dealing because Defendants prevented Porter Casino from purchasing the Majestic Star Casino. (Id. at ¶¶ 21-25.) The third is a claim for tortious interference with a business relationship because Defendants interfered with the Majestic Star Casino purchase. (Id. at ¶¶ 26-32.) The fourth is a claim for tortious interference with a business relationship because Defendants interfered with the financing of the Majestic Star Casino purchase. (Id. at ¶¶ 33-39.) The fifth is a claim for a declaration that Defendants have breached the subscription agreements, Porter Casino has not breached the subscription agreements, Porter Casino is entitled to damages, and Porter Casino may retain all funds Defendants paid. (Id. at ¶¶ 40-43.)

On April 13, 2018, Defendants filed a motion to dismiss for lack of jurisdiction. (D.E. No. 7.) Porter Casino responded on May 10, 2018. (D.E. No. 9.) On September 21, 2018, the Court denied the motion. (D.E. No. 20.)

On November 26, 2018, Defendants filed their Counterclaims and Third Party Claims. (D.E. No. 40.) Defendants bring five Counterclaims against Porter Casino. (Id. at 21-31 ¶¶ 30-58.) The first is for breach of contract for Porter Casino's breach

---

[1] The subscription agreements are also known as the "investment agreements." (See D.E. No. 40, 21 ¶¶ 32.)

of the subscription agreements. (Id. at 21-22 ¶¶ 30-33.) The second is for breach of contract for Porter Casino's breach of the termination agreements. (Id. at 22-23 ¶¶ 34-37.) The third is for fraud because Porter Casino made misrepresentations that Defendants relied on to enter into the subscription agreements. (Id. at 23-26 ¶¶ 38-43.) The fourth is for conversion, trover, and misappropriation because Porter Casino took possession of the escrow deposit. (Id. at 26-28 ¶¶ 44-50.) The fifth is for interpleader. (Id. at 28-31 ¶¶ 51-58.)

Defendants bring five Third Party Claims against Porter and Chicago Title and Trust Company ("Chicago Title"). (Id. at 32-43 ¶¶ 5-38.) The first is for interpleader against Porter. (Id. at 32-34 ¶¶ 5-9.) The second is for Section 10(b) securities violations against Porter and Porter Casino because Porter Casino and Porter made deceptive and manipulative statements in a securities transaction.[2] (Id. at 34-35, ¶¶ 10-16.) The third is for fraud against Porter based on statements he made to Defendants in his individual capacity. (Id. at 36-37, ¶¶ 17-23.) The fourth is for conversion, trover, and misappropriation against Porter because the escrow deposit was diverted. (Id. at 39-40, ¶¶ 24-29.) The fifth is for breach of contract against

---

[2] Defendants purport to bring their Section 10(b) securities fraud claim against Porter Casino as a Third Party Claim. (See D.E. No. 40, 35 ¶ 11.)

Chicago Title and Porter Casino for breach of the escrow agreement.[3]  (Id. at 41-43, ¶¶ 30-38.)

On February 22, 2019, Chicago Title filed a motion to dismiss for failure to state a claim.  (D.E. No. 53.)  On April 23, 2019, Defendants responded.  (D.E. No. 65.)  On May 2, 2019, Chicago Title replied.  (D.E. No. 67.)  The Court granted Chicago Title's motion and dismissed it from the case.  (D.E. No. 68.)

## II.  Jurisdiction and Choice of Law

The Court has diversity jurisdiction under 28 U.S.C. § 1332. A federal district court has original jurisdiction of all civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a)(1).

Plaintiff is a Tennessee corporation with its principal place of business in Tennessee.  (D.E. No. 50, 1 ¶ 1)  Defendant Georgia Gaming is a Georgia limited liability company.  (D.E. No. 19.) Its two members reside in Georgia.  (Id.)  See V & M Star, LP v. Centimark Corp., 596 F.3d 354, 356 (6th Cir. 2010) ("[L]imited liability companies 'have the citizenship of each partner or member.'" (quoting Delay v. Rosenthal Collins Grp.,

---

[3] Defendants purport to bring their breach of escrow claim against Porter Casino as a Third Party Claim.  (See D.E. No. 40, 41-43, ¶30-38.)

LLC, 585 F.3d 1003, 1005 (6th Cir. 2009))).  Defendant Tennessee

Holding is a Georgia limited liability company.  (D.E. No. 18.)

Its sole member resides in Georgia.  (Id.)  See V & M Star, LP,

596 F.3d at 356.  There is complete diversity.  28 U.S.C. §

1332(a)(1) (diversity exists when the parties are citizens of

different states).

Plaintiff seeks "not less than $1,500,000, plus such

interest as allowed by law, attorneys fees and damages as allowed

by law." (D.E. No. 50, 9 ¶ 2.)  The amount in controversy is

satisfied.  Cf. 28 U.S.C. § 1332(a)(1).  The Court has diversity

jurisdiction.

The subscription agreements Defendants signed include a

choice of law provision that designates Tennessee law.  (D.E.

No. 104-2, ¶ 6; D.E. No. 104-4, ¶ 6.)

**III. Standard of Review**

Under Federal Rule of Civil Procedure 56(a), a court must

grant a party's motion for summary judgment "if the movant shows

that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  The moving party must show that the nonmoving

party, having had sufficient opportunity for discovery, lacks

evidence to support an essential element of its case.  See Fed.

R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622,

630 (6th Cir. 2018).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). "A 'genuine' dispute exists when the plaintiff presents 'significant probative evidence' 'on which a reasonable jury could return a verdict for her.'" EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (quoting Chappell v. City of Cleveland, 585 F.3d 901, 913 (6th Cir. 2009)). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir. 2018) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (quotation marks and citations omitted).

## IV. Analysis

### A. Standing

Porter and Porter Casino argue that Defendants lack standing to bring their Counterclaims and Third Party Claims because

Defendants have not obtained a certificate of authority from Tennessee.

Under Tennessee law, "[a] foreign LLC transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority." Tenn. Code Ann. § 48-246-601(a). The proceedings may be stayed until the foreign LLC obtains a certificate. Tenn. Code Ann. § 48-246-601(c); <u>Saintsbury Holdings, LLC v. RMC, LLC</u>, No. 1:06-CV-00014, 2006 WL 1900317 at *4 (M.D. Tenn. July 11, 2006) ("Plaintiff's lack of a certificate of authority, if required, does not require dismissal, but can justify a stay of the proceedings"). However, "the failure of a foreign LLC to obtain a certificate of authority does not impair" "[t]he foreign LLC from defending any action, suit, or proceeding in any court of the state of Tennessee." Tenn. Code Ann. § 48-246-601(f)(3).

A nonregistered defendant may bring counterclaims. The Tennessee Court of Appeals has considered whether a defendant's lack of a certificate of authority requires the dismissal of the defendant's counterclaim. <u>Battery All., Inc. v. Allegiant Power, LLC</u>, No. W201502389COAR3CV, 2017 WL 401349 at *6 (Tenn. Ct. App. Jan. 30, 2017). The court concluded that the defendant could bring a counterclaim without a certificate of authority because it "was merely asserting the counterclaim as a defense to the

action filed against it in the Tennessee court." <u>Id.</u> The court relied on a <u>Arcata Graphics</u>, a case addressing a statute on foreign corporations, which the <u>Battery All.</u> court held was "substantially similar" to the statute governing foreign LLC's. <u>Id.</u> at n. 2, n. 3. In <u>Arcata Graphics</u>, the court held that "[the defendant] had been sued in Tennessee courts and was merely asserting as a defense a counterclaim, which arose out of the same transaction." <u>Arcata Graphics Co. v. Heidelberg Harris, Inc.</u>, 874 S.W.2d 15, 22 (Tenn. Ct. App. 1993).

Defendants bring Third Party Claims against Porter and Counterclaims against Porter Casino. Porter Casino's Claims and Defendants' Counterclaims are part of the same transaction, the purchase of the Majestic Star Casino. Defendants' Counterclaims against Porter Casino, the Plaintiff in this case, are permitted because the Counterclaims arise out of the same transaction as Plaintiff's Claims. Defendants' Third Party Claims against Porter are defenses to Porter Casino's underlying claims because Porter Casino's Claims and the Third Party Claims are based on the same transaction and explain why the full investment was never funded. Defendants have standing to bring their Counterclaims and Third Party Claims against Porter and Porter Casino.[4]

---

[4] Defendants have pending applications for certificates of authority. (<u>See</u> D.E. No. 109-1, ¶¶ 3-4.)

## B. Piercing the Corporate Veil

Porter argues that Defendants' Third Party Claims against him must be dismissed. He argues that he has no personal liability for the debts or actions of Porter Casino because Defendants fail to show that the corporate veil should be pierced.

Under Tennessee law, "a corporation and its shareholders are distinct entities." Cambio Health Sols., LLC v. Reardon, 213 S.W.3d 785, 790 (Tenn. 2006). The separate legal status of a corporation generally protects its shareholders from liability for the corporation's debts and financial obligations. Id.; Tenn. Code Ann. § 48-16-203(b) ("The shareholder of a corporation is not personally liable for the acts or debts of the corporation except that the shareholder may become personally liable by reason of the shareholder's own acts or conduct"). A plaintiff may persuade "a court to disregard the separate corporate entity, also known as 'piercing the corporate veil.'" Cambio, 213 S.W.33d at 790; Tenn. Code Ann. § 48-16-203(b). "The doctrine of piercing the corporate veil applies equally to cases in which a party seeks to pierce the veil of a limited liability company." Edmunds v. Delta Partners, L.L.C., 403 S.W.3d 812, 828-829 (Tenn. Ct. App. 2012) (citing In re Steffner, 479 B.R. 746, 755 (Bkrtcy. E.D. Tenn. 2012)).

Defendants bring their Third Party Claims against Porter in his individual capacity. (D.E. No. 40 ¶ 8; ¶ 11; ¶ 18; ¶ 25.) Piercing the corporate veil is used to hold a shareholder liable for the acts or debts of the corporation. See Cambio, 213 S.W.33d at 790; Tenn. Code Ann. § 48-16-203(b). Porter is not entitled to dismissal of Defendants' Third Party Claims under the doctrine of piercing the corporate veil because Defendants' Third Party Claims are based on Porter's own actions.

### C. Breach of Subscription Agreements

Porter Casino argues that it is entitled to summary judgment on Defendants' Counterclaim for breach of the subscription agreements because Porter Casino's breach was anticipatory.

Under Tennessee law, a breach of contract claim requires proof of "the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." Fed. Ins. Co. v. Winters, 354 S.W.3d 287, 291 (Tenn. 2011). Interpretations of unambiguous contract terms are issues of law and may be decided on summary judgment. Bourland, Heflin, Alvarez, Minor & Matthews, PLC v. Heaton, 393 S.W.3d 671, 674 (Tenn. Ct. App. 2012). "Whether a party has fulfilled its obligations under a contract or is in breach of the contract is a question of fact." Forrest Const. Co., LLC v. Laughlin, 337 S.W.3d 211, 225 (Tenn. Ct. App. 2009).

Porter Casino is not entitled to summary judgment based on its argument that any breach it committed was anticipatory. Each subscription agreement was subject to the terms and conditions of a letter of intent signed by one of the Defendants. (D.E. No. 104-2, ¶ 4; D.E. No. 104-4, ¶ 5.) Under the terms of the letters of intent, Defendants' capital investment was "conditioned upon the completion of all the terms and conditions described in the Casino LOI, including but not limited to a Sale Commitment, completion of all due diligence, and the execution of a definitive Purchase and Sale Agreement, all as more particularly described in the Casino LOI." (D.E. No. 104-3, ¶ 8; D.E. No. 104-5, ¶ 7.) The letters of intent were conditioned on Porter Casino's having a binding commitment from a lender acceptable to Defendants to fund the purchase of the Majestic Star Casino. (D.E. No. 104-3, ¶ 9; D.E. No. 104-5, ¶ 8.) Defendants expressed concern to Porter Casino about its ability to purchase the Casino and did not fully invest in Porter Casino. (See D.E. No. 109-7, 8.) Porter Casino alleges that Defendants caused the purchase of the Majestic Star Casino to fail. (D.E. No. 50, ¶¶ 14-17; D.E. No. 109-7.)

Defendants' Counterclaim cannot be decided based on unambiguous contract terms. The Counterclaim turns, in part, on whether the parties fulfilled their contractual obligations.

That is a question of fact. Summary judgement is not appropriate.

The moving party has the burden of showing that there is no genuine dispute of material fact. <u>Pittman v. Experian Info. Sols., Inc.</u>, 901 F.3d 619, 627 (6th Cir. 2018). Porter Casino has not met its burden.

Porter Casino's Motion is **DENIED** on the breach of the subscription agreements Counterclaim.

### D. Breach of Termination Agreements and Breach of Escrow Agreement

Porter Casino argues that Defendants have failed to state a claim for breach of the termination agreements and breach of the escrow agreement because Defendants did not attach the termination agreements and escrow agreement to their Counterclaim.

In <u>Northampton Restaurant</u>, the Sixth Circuit affirmed the trial court's dismissal of a claim for breach of contract where the plaintiff did not attach the contract to the complaint or "include the language of any specific contractual provisions." <u>Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.</u>, 492 F. App'x 518, 521-522 (6th Cir. 2012). The court decided that the plaintiff had failed to state a claim because the plaintiff could not allege sufficient facts to support its breach of contract

claim without the contract or without including the language of the contract in the complaint. Id. The plaintiff had lost the contract and was not permitted to engage in discovery to obtain it. Id. Courts may consider a contract when it is attached to a brief in deciding a motion to dismiss. See Miles-McClellan Constr. Co., Inc. v. Kenny/Obayashi, No. 2:16-CV-577, 2017 WL 3209524 (S.D. Ohio Mar. 29, 2017).

This case has moved beyond the dismissal stage. Discovery has been taken. Defendants have disclosed the termination agreements and the escrow agreement. (See D.E. No. 109-4; D.E. No. 109-5, D.E. No. 111-4; D.E. No. 111-5; D.E. No. 109-6.) A party may rely on materials in the record, including documents, in responding to a summary judgment motion. See Fed.R.Civ.P. 56(c)(1). Disclosing the termination agreements and the escrow agreement satisfies the requirement that the contract or contract language be provided by the party bringing a breach of contract claim.

Porter Casino's Motion is **DENIED** on the breach of the termination agreement Counterclaim and the breach of the escrow agreement Third Party Claim.

**E. Fraud**

Porter Casino and Porter argue that Defendants have not pled fraud with the specificity required by Federal Rule of Civil Procedure 9(b).

Claims of fraud are governed by Rule 9(b)'s heightened pleading standard and must be pled with particularity. Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). To satisfy Rule 9(b), a plaintiff is required "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." Republic Bank & Tr. Co. v. Bear Stearns & Co., 683 F.3d 239, 247 (6th Cir. 2012). Courts may consider Rule 9(b) when deciding summary judgment motions. See Turner v. Speyer, No. 3:08 CV 1304, 2009 WL 2579420 at *6 (N.D. Ohio Aug. 18, 2009) (granting summary judgment on a fraud counterclaim based on Rule 9(b)); In re Darvocet, No. 2:11-MD-2226-DCR, 2015 WL 2451208 at *7-8 (E.D. Ky. May 21, 2015).

To prove fraud under Tennessee law, a plaintiff must prove "(1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, and (3) an injury

caused by reasonable reliance on the representation; and (4) the requirement that the misrepresentation involve a past or existing fact." Smith v. BAC Home Loans Servicing, LP, 552 F. App'x 473, 478-479 (6th Cir. 2014) (quoting Dobbs v. Guenther, 846 S.W.2d 270, 274 (Tenn. Ct.App. 1992)).

Defendants' allegations against Porter Casino satisfy Rule 9(b). Defendants allege that Porter Casino made material representations that it "knew, or should have known, were false and/or materially inaccurate and misleading." (D.E. No. 40, ¶ 40.) Defendants allege that Porter Casino misrepresented:

> (i) that [Porter Casino] had binding financial commitments and funding sources sufficient to complete the acquisition of the Casino; (ii) that [Porter Casino] would issue stock in and to Georgia Gaming and Tennessee Holding in exchange for invested funds; (iii) that [Porter Casino] would elect representatives of Georgia Gaming and Tennessee Holding to the Board of Directors of PCR in exchange for invested funds; (iv) that [Porter Casino] would be re-capitalized and re-structured after investment of funds by Georgia Gaming and Tennessee Holding; and (v) that [Porter Casino] would refund Georgia Gaming and Tennessee Holding the sum of $ 1,500,000.00, from either new investment proceeds received by [Porter Casino] or a refund of the Escrow Deposit, if Georgia Gaming and Tennessee Holding would execute the Termination Agreement.

(D.E. No. 40, ¶ 40.)

Defendants allege that they relied on variations of Porter Casino's misrepresentations to enter into the subscription and termination agreements. (Id. at ¶ 41.) Defendants allege that Porter Casino assured Defendants that it had the funding and

19

financing commitments necessary to purchase the Majestic Star Casino. (Id. at ¶ 11.) Defendants allege that Porter made false and inaccurate statements in his individual capacity about funding and the ability of Porter Casino to purchase the Casino. (Id. at ¶¶ 19-20.) The allegations that Porter Casino and Porter told Defendants that Porter Casino had financing when it did not are sufficient to satisfy Rule 9(b).

Porter Casino also argues that summary judgment is appropriate because there is no genuine dispute of material fact about Defendants' reliance on Porter Casino's representations. Porter Casino argues that the subscription agreements warned Defendants that the investment was speculative and "involved a high degree of risk of loss." (D.E. No. 104-2; D.E. No. 104-4.) Porter Casino also argues that, because the letters of intent allowed Defendants to review Porter Casino's records, any misrepresentations would not have been material. (See D.E. No. 104-3; D.E. No. 104-5.)

Under Tennessee law, the party asserting fraud must, "when confronted by a motion for summary judgment, [] produce some competent and material evidence legally sufficient to support his claim or defense." Fowler v. Happy Goodman Fam., 575 S.W.2d 496, 499 (Tenn. 1978). Under federal law, when the moving party demonstrates the basis for its motion, "[t]he nonmoving party

'must set forth specific facts showing that there is a genuine issue for trial.'" Pittman, 901 F.3d at 628 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (internal citations and quotation marks omitted)). Defendants cite no evidence in response that shows Porter Casino made misrepresentations that Defendants reasonably relied on. Defendants cite their Counterclaims and Third Party Claims to show the misrepresentations were fraudulent. (See D.E. No. 109, 9-14.) They cite exhibit 7 to Fricke's deposition as evidence that Porter Casino intended to defraud them because Porter Casino spent the $1,500,000 on "payments to individuals and entities other than [Defendants]". (Id. at 12.) The mere fact that Porter Casino later may have spent the contested money inappropriately does not satisfy Defendants' burden to show intent. No affidavits, depositions, emails, or other documents are cited to show that Defendants relied on any misrepresentations by Porter Casino.

Porter argues that he is entitled to summary judgment because Defendants provide no evidence that Porter acted in his individual capacity and because Defendants cannot show reasonable reliance. (D.E. No. 103-9, 12-16.) Defendants cite no evidence other than the evidence cited in response to Porter Casino. Defendants provide no evidence to support their

allegations that they relied on any misrepresentations by Porter or that Porter made representations in his individual capacity. Defendants argue that "[t]he multitude of facts pled by [Defendants] also give rise to a strong inference that Porter knowingly misrepresented such facts". (D.E. No. 111, 11.) An inference based on the pleadings is insufficient to survive summary judgment.

Porter Casino's Motion is **GRANTED.** Defendants' fraud Counterclaim is **DISMISSED.** Porter's Motion is **GRANTED.** Defendants' fraud Third Party Claim is **DISMISSED.**

## F.   Section 10(b) Securities Violations

Section 10(b) of the Securities Exchange Act of 1934 governs securities fraud. 15 U.S.C. § 78j. The relevant portion of Section 10(b) reads as follows:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> ****
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement[,] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

Securities fraud must be pled with specificity under Rule 9(b). In re Comshare Inc. Sec. Litig., 183 F.3d 542, 548 (6th Cir. 1999). The "underlying rationale" of cases involving pleading under 9(b) "is applicable to the summary judgment setting as well." Nolfi v. Ohio Kentucky Oil Corp., 562 F.Supp. 2d 904, 910 (N.D. Ohio 2008). "[A] plaintiff must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury. Comshare, 183 F.3d at 548. The claim must meet the "more exacting pleading requirement imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4." In re Yum! Brands, Inc. Sec. Litig., 73 F. Supp. 3d 846, 858 (W.D. Ky. 2014), aff'd sub nom. Bondali v. YumA Brands, Inc., 620 F. App'x 483 (6th Cir. 2015). Under the PSLRA the plaintiff in a securities fraud case must

> (1) ... specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed [and]

> (2) ... state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

<u>Frank v. Dana Corp</u>., 547 F.3d 564, 570 (6th Cir. 2008) (quoting 15 U.S.C. § 78u-4(b)(1),(2)). All the pled facts, taken together, must "give rise to a strong inference of scienter" and the court must consider "plausible opposing inferences." <u>Id.</u> at 570-571 (citing <u>Tellabs, Inc. v. Makor Issues & Rts., Ltd.,</u> 551 U.S. 308, 321-322 (2007)). The movant must show that there is a strong inference of scienter at the summary judgment stage. <u>See Brown v. Earthboard Sports USA, Inc.,</u> 481 F.3d 901, 916-917 (6th Cir. 2007).

Porter Casino argues that Section 10(b) does not apply because the transaction at issue was a transfer of a security rather than a sale and that the securities were not listed on a stock exchange. Neither of those arguments is well taken. Porter Casino has provided no support for its argument that an investment of money in exchange for a transfer of securities is not a purchase or sale. The term "sale" and "sell" "shall include every contract of sale or disposition of a security or interest in a security, for value." 15 U.S.C. § 77b(a)(3). Porter Casino and Defendants formed contracts to exchange securities for value.

Porter Casino cites <u>Morrison v. Nat'l Australia Bank Ltd.,</u> 561 U.S. 247, 273 (2010), for the proposition that being listed on an exchange is a precondition to the application of Section

10(b).  The court in Morrison, however, held only that Section 10(b) does not apply extraterritorially because Section 10(b) applies "only in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States."  Morrison, 561 U.S. at 273.  Section 10(b) applies to the transaction at issue in this case.

Defendants have failed to demonstrate a "strong inference of scienter."  The nonmoving party must "adduce[] sufficient evidence to withstand summary judgment."  Brown, 481 F.3d at 918-919.  Defendants allege that "[t]he actions, misrepresentations, and manipulative and deceptive acts and statements of PCR and Porter were accomplished with scienter."  (D.E. No. 40, 35 ¶ 15.) Defendants also incorporate paragraphs 1-58 of the Counterclaim. (Id. at 35 ¶ 13.)  Defendants offer no evidence to support their conclusory allegations or that give rise to a strong inference of scienter.  At the summary judgment stage, a party may not rest on its pleadings, but must present probative evidence to support its case.

Defendants' Section 10(b) Third Party Claim against Porter fails for the same reason.  Defendants offer no probative evidence to support their allegations or that give rise to a strong inference of scienter.

Porter Casino's Motion is **GRANTED** on the Section 10(b) Counterclaim.  Defendants' Counterclaim is **DISMISSED**.  Porter's Motion is **GRANTED** on the Section 10(b) Third Party Claim. Defendants' Third Party Claim is **DISMISSED**.

### G. Conversion, Trover, and Misappropriation

Porter Casino's argument for summary judgment on Defendants' conversion, trover, and misappropriation Counterclaims is that Defendants did not attach the termination agreements to the Counterclaims.  For the reasons discussed in Section D, that argument is not well-taken.  Defendants have provided the termination agreements.

Porter's argument for summary judgment on Defendants' conversion, trover, and misappropriation Third Party Claims is that the subscription agreements preclude a finding of conversion, trover, and misappropriation.  Defendants argue that a novation occurred because the termination agreements superseded the subscription agreements.

Under Tennessee law, a "[n]ovation is the substitution of a new obligation for an existing one or the substitution of a third party for the existing obligor."  TWB Architects, Inc. v. Braxton, LLC, 578 S.W.3d 879, 890 (Tenn. 2019).  To establish a novation, a party must show "(1) a previously valid obligation, (2) the agreement of all parties to a new contract, (3) the

extinguishment of the old contract, and (4) a valid new contract." Id. at 891 (quoting 21 Steven W. Feldman, Tennessee Practice Series Contract Law and Practice, § 3:42 (May 2019 Update) (internal quotations removed)).

"Conversion is the appropriation of tangible property to a party's own use in exclusion or defiance of the owner's rights." PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp., 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012). To prove conversion, the plaintiff must show "(1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." Id. "Trover lies for the conversion of determinate sums . . . where there is an obligation to keep the money intact or to deliver it." Id. at 554. Conversion may be described as misappropriation. See Id.

The Court need not reach the effect of the subscription and termination agreements to decide this Third Party Claim against Porter. When invoking the corporate veil, Porter argues that nothing in Defendants' Third Party Complaint shows he acted in his individual capacity. Defendants have not offered any evidence that Porter, in his individual capacity, might be liable for conversion or trover. The only evidence cited is that Porter was CEO and shareholder of Porter Casino and that the escrow

deposit was exhausted.  (See D.E. No. 103-8, ¶¶ 4, 10.)  In response to a summary judgment motion, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Pittman, 901 F.3d at 628 (quoting Anderson, 477 U.S. at 250 (internal citations removed)).  Defendants have not met their burden.

Porter Casino's Motion is **DENIED** on Defendants' conversion, trover, and misappropriation Counterclaims.  Porter's Motion is **GRANTED**.  Defendants' conversion, trover, and misappropriation Third Party Claims against Porter are **DISMISSED.**

### H. Interpleader

Porter Casino argues that it is entitled to summary judgment on Defendants' interpleader Counterclaim because Defendants did not attach the termination agreements to their Counterclaims, the subscription agreements permitted Porter Casino to use the funds for its own benefit, and interpleader must be brought in a judicial district in which one of the claimants resides. Porter argues that he is entitled to summary judgment on Defendants' interpleader Third Party Claim because the money at issue was disbursed to Porter Casino and interpleader must be

brought in the judicial district in which one of the claimants resides.

Interpleader is an equitable proceeding. <u>United States v. High Tech. Prod., Inc.,</u> 497 F.3d 637, 641 (6th Cir. 2007). Typically, a disinterested stakeholder deposits the disputed property with the court. 28 U.S.C. § 1335; <u>High Tech</u>, 497 F.3d at 642 n. 2. Federal law provides for statutory and rule interpleader. <u>Id.</u> at 641 n. 1. The general principles of applicability are the same for both. <u>See id.</u> Defendants have pled both. (<u>See</u> D.E. No. 40, 28 ¶ 52.) The "primary test" for whether interpleader is appropriate "is whether the stakeholder legitimately fears multiple vexation directed against a single fund [or property]." <u>Id.</u> at 642, quoting 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, <u>Federal Practice and Procedure</u>, § 1704 (3d ed. 2001).

Defendants' interpleader Counterclaim must be dismissed for reasons other than those Porter and Porter Casino argue. There is no disinterested stakeholder of disputed property. The escrow account was deposited with Chicago Title, which has been dismissed. (D.E. No. 68.) The money at issue has not been deposited with the Court. (<u>See</u> D.E. No. 103-8, ¶ 10.) There is no single fund. Porter Casino represents that it has exhausted the funds. (<u>Id.</u>) Defendants are not at risk of multiple claims

29

because Defendants and Porter Casino are the only claimants. (See D.E. No. 50.) There is no basis for an interpleader Counterclaim against Porter Casino.

Defendants' interpleader Third Party Claim against Porter must be dismissed because, inter alia, he makes no claim against any fund. For the reasons discussed as to Porter Casino, there is no basis for an interpleader Third Party Claim against Porter.

Porter Casino's Motion is **GRANTED.** Defendants' interpleader Counterclaim is **DISMISSED.** Porter's Motion is **GRANTED.** Defendants' interpleader Third Party Claim is **DISMISSED.**

## V.   Conclusion

Porter Casino's Motion is **GRANTED** in part and **DENIED** in part. Defendants' Counterclaims for fraud, Section 10(b) fraud, and interpleader against Porter Casino are **DISMISSED.**

Porter's Motion is **GRANTED.** Defendants' Third Party Claims against Porter are **DISMISSED.**

SO ORDERED this 25th day of June, 2021.


/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE